IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRICAL BENEFIT  *
FUND,
            *
  Plaintiff,
            *   Civil No. TDC-17-1469
v.
            *
OMNI ELECTRICAL SYSTEMS, INC.,
            *
  Defendant.
      *  *  *  *  *  *

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Default Judgment ("Motion") (ECF No. 11) filed by Plaintiff National Electrical Benefit Fund ("NEBF"). Defendant Omni Electrical Systems, Inc. ("Omni") has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2(a). On November 29, 2017, in accordance with 28 U.S.C. § 636 and pursuant to Local Rule 301.6, Judge Chuang referred this case to me for a report and recommendation on NEBF's Motion. (ECF No. 12.) I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that NEBF's Motion be granted.

I.  **FACTUAL AND PROCEDURAL HISTORY**

In this case, NEBF filed suit against Omni under the Employee Retirement Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1132(e), to recover delinquent pension fund contributions and related relief. (ECF No. 1.) Omni was personally served with the Complaint and summons but did not file an answer or responsive pleading within the requisite time period. On June 29, 2017, NEBF moved for the Clerk's entry of default (ECF No. 5), and the Clerk

entered default against Omni on July 6, 2017 (ECF No. 8). On July 25, 2017, NEBF filed the Motion, to which Omni has not responded.

## II. LEGAL ANALYSIS

### A. Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims

liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

### B. Liability

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA further provides that employers who fail to make timely contributions are liable in a civil action for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and any other relief the Court deems appropriate. 29 U.S.C. § 1132(a), (g).

In the Complaint, NEBF alleges that it is a multiemployer employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2). (ECF No. 1 ¶ 4.) Omni is an employer that has agreed to participate in the NEBF pursuant to collective bargaining agreements with the International Brotherhood of Electrical Workers Local Union 98 ("Collective Bargaining Agreements"). (*Id.* ¶ 6.) Pursuant to the Collective Bargaining Agreements, Omni is required to submit contributions to the NEBF on behalf of Omni's covered employees. (*Id.*) In addition to its obligations under the Collective Bargaining Agreements, Omni is also bound to the terms and

conditions of the Restated Employees Benefit Agreement and Trust for the NEBF ("Trust Agreement"). (*Id.* ¶ 7.) Notwithstanding its obligations, Omni has failed to make the contributions required by the Collective Bargaining Agreements and the Trust Agreement to the NEBF for its covered employees. (*Id.* ¶ 8.) NEBF alleges that Omni owes $14,897.11 in delinquent contributions in connection with work performed by Omni's covered employees in August 2016 and September 2016. (*Id.* ¶ 9.) Despite NEBF's demands for payment, Omni remains delinquent in its payment obligations. (*Id.* ¶ 10.)

On January 25, 2018, the Court ordered NEBF to supplement its Motion with proof that Omni is a signatory to the Collective Bargaining Agreements and the Trust Agreement, as has been required in other cases. (ECF No. 13.) *See Trustees of the Electrical Workers Local No. 26 Pension Trust Fund v. Control Specialties, LLC*, No. TDC-16-0220 (ECF No. 35); *Trustees of Nat'l Auto. Sprinkler Indus. Fund v. Sprinkler Contractors, LLC*, No. TDC-16-2639 (ECF No. 14). In response, NEBF submitted an affidavit of Angel Losquadro ("Losquadro"), the Director of the Audit and Delinquency Department of NEBF. (ECF No. 14.) Losquadro states that Omni is bound to contribute to the NEBF because it executed a Letter of Assent, which is attached at ECF No. 14-1. Through the Letter of Assent, Omni agreed to "comply with, and be bound by, all of the provisions contained in" the "current and subsequent approved labor agreements" between the "Philadelphia Division, Penn-Del-Jersey Chapter NECA and Local Union 98, IBEW." (*Id.* at 2.)

The inside commercial labor agreement ("Labor Agreement") for the relevant period is attached at ECF No. 14-2. It applies to "ALL FIRMS who sign a LETTER OF ASSENT to be bound" by it. (*Id.* at 5.) And specifically, in Section 6.01, it provides that each employer that has assented to the Labor Agreement "accepts, and agrees to be bound by, the Restated Benefit

4

Agreement and Trust." (*Id.* at 33.) A copy of the Trust Agreement, which is discussed below, is attached at ECF No. 14-3. Through Losquadro's Affidavit and the exhibits attached thereto, NEBF has established that Omni is bound by the Labor Agreement (the operative Collective Bargaining Agreement for the relevant time) and the Trust Agreement.

Accepting as true the unchallenged allegations of the Complaint, along with the evidence submitted in NEBF's supplement to its Motion, NEBF has established Omni's liability for failure to pay the contributions required by the Labor Agreement and the Trust Agreement.

### C. Damages

Having determined that NEBF has established Omni's liability, it is now appropriate to determine the damages to which NEBF is entitled. The damages NEBF seeks in its Motion are appropriate under Rule 54(c) so long as "the record supports the damages requested." *See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010). Here, NEBF has provided sufficient evidence to support its claim for damages in the amount of $20,431.46.

In support of its claim for damages, NEBF relies on an affidavit signed by Losquadro (ECF No. 11-2). Under the Trust Agreement, which Losquadro incorporates into the affidavit (*id.* at 5-12), NEBF may recover delinquent contributions, interest on delinquent contributions at a rate of ten percent, liquidated damages in the amount of twenty percent of the delinquent contributions, and attorney's fees and costs incurred in collecting delinquent contributions. As discussed above, these damages are allowed under ERISA. 29 U.S.C. § 1132(g). Based on Omni's self-reporting to the NEBF for the periods of August 2016 and September 2016, Losquadro states that Omni is delinquent in its contributions in the amount of $14,897.10. (*Id*. at 14; ECF No. 14 at 2.) In the affidavit submitted as a supplement to NEBF's Motion, Losquadro

5

explains how the amount of Omni's delinquent contributions was calculated. (*Id.* at 2.) Omni reported that it paid wages of $330,539.14 to its covered employees for the month of August 2016 (ECF No. 14-4 at 2), and wages of $166,031.01 to its covered employees for the month of September 2016 (*id.* at 3). Because the Trust Agreement required Omni to contribute 3% of these amounts to NEBF, Omni was required to contribute $9,916.17 to NEBF for August 2016 and $4,980.93 for September 2016. (*Id.*) The sum of Omni's delinquent contributions is $14,897.10.[1] NEBF notified Omni of its delinquency, but Omni did not respond to NEBF's letters or pay its delinquent contributions. (*Id.* at 2-3.)

NEBF also seeks interest on the delinquent contributions in the amount of $1,378.24, the calculation of which is set forth in Exhibit 2 to Losquadro's affidavit (ECF No. 11-2 at 14). The amount of delinquent contributions and interest that NEBF seeks is consistent with the Complaint and supported by Losquadro's affidavits. I recommend that the Court award NEBF $14,897.10 for Omni's delinquent contributions and $1,378.24 for interest on those contributions.

In addition to liquidated damages and interest, Losquadro states that Omni owes NEBF liquidated damages in the amount of $2,979.42. (*Id.* at 2.) Under the Trust Agreement, NEBF is entitled to "liquidated damages [in] an amount up to twenty percent (20%) of the amount found to be delinquent." (*Id.* at 11.) The amount of liquidated damages that NEBF seeks is consistent with the Complaint and supported by Losquadro's affidavits. I recommend that the Court award NEBF $2,979.42 in liquidated damages.

---

[1] NEBF's Motion seeks $14,897.11 in delinquent contributions, but the calculations submitted in connection with the supplement to the Motion (ECF No. 14 at 2) reflect that the correct amount of delinquent contributions is $14,897.10.

NEBF also seeks an award of attorney's fees and costs, which are available in ERISA cases. 29 U.S.C. §1132(g)(2). When a court enters judgment in favor of the plaintiff in an ERISA action for a plan to recover unpaid contributions, it "shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." *Id*. In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for twenty years or more may reasonably bill $300-475 per hour. Paralegals and law clerks may reasonably bill $95-150 per hour. These rates serve as guidelines in determining the reasonableness of hourly rates.

Throughout this litigation, NEBF has been represented by Jennifer Hawkins ("Ms. Hawkins") of the law firm Potts-Dupre, Hawkins & Kramer, Chrtd. (*See* ECF No. 11-1.) Ms. Hawkins has been a licensed attorney for more than 22 years and has been responsible for NEBF's ERISA collections proceedings at her law firm since 1996. (*Id.* ¶ 3.) Ms. Hawkins charged a rate of $379.00 per hour in this case. (*Id.* ¶ 5.) This rate is within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate. Ms. Hawkins' legal assistant,

7

Caroline Lippie ("Ms. Lippie"), charged a rate of $139.00 per hour. This rate is also within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate. I further find that the time that Ms. Hawkins and Ms. Lippie spent working on this case, which is detailed in Ms. Hawkins' affidavit (*id.* ¶ 6), is reasonable. I recommend that the Court award to NEBF attorney's fees in the amount of $626.70.

Finally, NEBF incurred a total of $550.00 in costs, which includes the $400.00 fee for filing the complaint and a $150.00 service fee. (*Id.* ¶ 9.) I recommend that the Court award to NEBF costs in the amount of $550.00.

In total, I recommend that $20,431.46 in damages be awarded to NEBF against Omni. This amount is comprised of $14,897.10 in delinquent contributions for August 2016 and September 2016; $1,378.24 in interest; $2,979.42 in liquidated damages; $626.70 in attorney's fees; and $550.00 in costs. I also recommend that NEBF be awarded any additional fees and costs incurred in connection with the enforcement of the judgment, and post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

### III. CONCLUSION

In sum, I recommend that the Court:

1. Grant National Electrical Benefit Fund's Motion for Default Judgment (ECF No. 11);

2. Enter judgment in favor of National Electrical Benefit Fund against Omni Electrical Systems, Inc. in the amount of $20,431.46, plus post-judgment interest to accrue at the legal rate;

I also direct the Clerk to mail a copy of this Report and Recommendation to Omni Electrical Systems, Inc. Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

February 26, 2018
Date

/s/
Timothy J. Sullivan
United States Magistrate Judge